IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Empire Fire and Marine Ins. Co.,           Case No. 3:05CV7369

        Plaintiff

        v.                                            ORDER

Nicholas Keifer, et al.,

        Defendant

      This is a declaratory judgment action brought by Empire Fire and Marine Insurance Company [Empire], which seeks a declaration that an umbrella policy issued to Montpelier Auto Transport, Inc. [Montpelier] provides no coverage for injuries received by defendant Jason Chehi.

      Pending are counter-motions for summary judgment. For the reasons that follow, I conclude that the policy provides coverage; accordingly, defendants' counter-motion for summary judgment shall be granted.

**Background**

      On December 10, 2002, Chehi was hit and seriously injured by a disabled recreational vehicle being moved on Montpelier's premises. A Montpelier employee, Clemeth Federspiel, was using a tow truck to push the vehicle. Before starting the movement, Federspiel had a friend, Nicholas Kiefer, not a Montpelier employee, who was asked by Federspiel to get into the vehicle and place the RV's transmission in neutral. After Kiefer had done so, Federspiel began pushing the vehicle, which had gone about fifteen feet before striking and running over Chehi.

      Chehi and his wife sued Montpelier and Kiefer in the Court of Common Pleas for Williams County, Ohio. A jury returned a verdict of $1.1 million in favor of the Chehis.

Empire had issued two liability insurance policies to Montpelier. One policy, a garage keeper's policy, had limits of $12,500. The other, the umbrella policy at issue in this suit, has limits of $2 million.

Empire concluded that Kiefer, though not a Montpelier employee, was an insured, as "permissive user" of a covered vehicle, under the garage keeper's policy. Empire informed Kiefer, however, that the umbrella policy did not cover permissive users. Empire declined, accordingly, to provide coverage for the judgment in favor of the Chehis in excess of the $12,500 limits of the garage keeper's policy.

Empire's policies, though issued in tandem, contain differing definitions of "Who is an 'Insured.'"

The garage keeper's policy defines "insured" as follows:

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds"

    a.    The Named Insured and any "family members"

    b.    Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". However, no coverage is provided for anyone occupying an "auto" which is not a covered auto for Uninsured Motorists Coverage under this coverage form.

    c.    Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured."

2. A partnership, limited liability company, corporation, or any other form of organization, then the following are "insureds"

    a.    *Anyone "occupying" a covered "auto"* or a temporary substitute for a covered "auto". *The covered "auto" must be out of service because of its breakdown, repair, servicing*, "loss" or destruction. However, no coverage is provided for anyone occupying an "auto" which is not a covered auto for

>> Uninsured Motorists and/or Underinsured Motorists Coverage under this coverage form.
>
> b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured."

Doc. 29, Exh. C, "Plcy _0021" [Emphasis supplied].

The garage keeper's policy, in its provisions applicable to "Garage Liability Coverage Tier 2" contains an additional definition of "who is an insured":

> 1. The following are "insureds" for "Garage Operations" - "Auto" Liability:
>
>    a. You; and
>
>    b. *Anyone else while using with your permission* a "covered auto" you own, hire or borrow except at set forth in WHO IS NOT INSURED.
>
> 2. The following are "insureds" for "Garage Operations" - Other Than "Auto" Liability:
>
>    a. You;
>
>    b. Your partners, employees, directors or shareholders but only while acting within the scope of their duties; and
>
>    c. If you are a partnership, the spouse of a partner is an "insured" with respect to the conduct of your garage business.

*Id.*, "Plcy _0068" [Emphasis supplied].

"Garage Liability Coverage Tier 2," uniquely among the policy provisions pertinent to this case, also states, *inter alia*, "Who is not insured":

> 1. The owner or anyone else from whom you hire or borrow a "covered auto" This exception does not apply if the "covered auto" is a "trailer" connected to a "covered auto" you own.
>
> 2. Your employee if a "covered auto" is owned by that employee or a member of his or her household.

3

    3.      Someone using a "covered auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is your "garage operations".

    4.      Your customers, if your business is shown in the Declarations as an "auto" dealership. . . .

* * * * *

    5.      A partner of yours for a "covered auto" owned by him or her or a member of his or her household.

*Id*., "Plcy _0068-69".

The umbrella policy defines, *inter alia*, "insured" as follows:

    2.      With respect to "garage operations" involving the ownership, maintenance or use of an "auto" the following are "insureds":

          a.      You;

          b.      Your partners, but not for any "auto" owned by him or her or a member of his or her household;

          c.      An officer if you are a corporation, but not for any "auto" owned by such officer or by a member of his or her household;

          d.      The spouse of (a), (b), and (c) above, but not for any "auto" owned by such spouse or by a member of his or her household; and

          e.      Only such other individuals who are specifically shown in the Declarations as a Designated Person, but not for any "auto" owned by such individual or by a member of his or her household.

*Id*., "Plcy _0068-69".

The umbrella policy undertakes to carry forward, with the limitation expressed in the following provision, the terms and conditions of the garage keeper's policy:

    1.      APPLICATION OF UNDERLYING INSURANCE

          *Unless a provision to the contrary* appears in our policy, all the conditions, definitions, agreements, exclusions and limitations of the "underlying

4

insurance", including changes by endorsement, will apply to our policy. If changes are made, you will notify us as soon as practical of the change.

*Id.*, "Plcy _0141" [Emphasis supplied].

In other words, the definition of "insured" in the garage keepers policy [which is the "underlying policy" vis-a-vis the umbrella policy] is included in the umbrella policy "[u]nless a provision to the contrary" appears in the umbrella policy.

## Discussion

The question raised by this case is easily stated: is the definition of "insured" in the umbrella policy a provision that is "contrary" to the definition of "insured" in the underlying garage keepers policy?[1] If so, the failure to include permissive users in the umbrella policy excludes coverage. If, though, the definition in the umbrella policy is not contrary to that in the garage keepers policy, a permissive user, such as Kiefer, who is covered by the underlying policy, is covered as well by the umbrella policy.

Plaintiffs point to two state court cases holding that permissive users covered by an underlying policy were covered by an Empire umbrella policy substantially similar to the one issued to Montpelier. Once case, *Empire Fire & Marine Ins. Co. v. Duran*, 548 P.2d 422 (Ariz. App. 1976), involved an underlying policy issued by another company. In the other case, *Empire Fire & Marine Ins. Co. v. Archer*, 2005 WL 3005772 (N.J. Super. A.D.), Empire had issued both the underlying and excess policies. In *Archer*, moreover, the pertinent provisions of both policies were in all material respects the same as those in this case.

---

[1] To the extent that other grounds for coverage have been asserted, they are waived as no response was submitted to Empire's motion for summary judgment as to those additional grounds.

The principal focus in both cases was elsewhere than on the issue presented in this case. But both addressed the issue and ruled that the Empire umbrella policy provided coverage notwithstanding the definitions of "insured" in the umbrella policy. In other words, both courts held that there was nothing contrary to the provisions of the underlying policy in the provisions of the umbrella policy. *Duran*, 548 P.2d at 424-425; *Archer*, 2005 WL 3005772, at *7.

These decisions from mid-level state appellate courts are, of course, not binding on this court [particularly in view of the unreported status of the decision in *Archer*]. The decision in *Archer* appears, moreover, to apply a very stringent approach toward exclusions. 2005 WL 3005772, at *7 [referencing the "lack of a specific exclusion" for permissive users in the umbrella policy].

Nonetheless, and despite Empire's unsuccessful efforts to distinguish and argue against the rationale of these decisions, I agree with the conclusion each reached.

First, an ambiguity arises when the policies, issued in tandem, are sought to be read *in pari materia*. The umbrella policy can be viewed as defining as an insured only those categories of persons listed therein [the named insureds and corporation ("You"), partners and officers and their spouses, and "[o]nly such other individuals who are specifically shown in the Declarations as a Designated Person"].

If this list is meant to be exclusive, that fact is not manifest from how it is drafted. To be sure, subsection d. refers to "[o]nly such other individuals" listed in the Declarations to the umbrella policy. But, as the defendants point out, a restrictive interpretation of this provision would leave employees uncovered.

That makes no sense. The lack of sense from a restrictive reading of this provision – which is necessary to find that it is contrary to the "insureds" definition in the underlying policy – is

6

apparent also from the consideration that operation of covered vehicles without permission by a spouse of an officer or director would be covered under the umbrella policy, but not under the underlying policy.[2]

Perhaps more importantly, Empire knew full well how to be specific about coverage exclusions: it did so in the "Garage Liability Coverage Tier 2" segment of the underlying policy. Stating the exclusion in the umbrella policy's definition of insureds or adding a rider with the exclusion would have made clear that permissive users were not covered. That would have eliminated this dispute.

Uncertainty, like that created by these provisions, is not favored in an insurance contract. Having drafted the policies and sold them in tandem, Empire should have them, per the general rule of construction, in favor of coverage. *See, e.g.,Toms v. Hartford Fire Ins. Co.,* 146 Ohio St. 39 (1945) (Syllabus, ¶ 1) ("A contract of insurance prepared and phrased by the insurer is to be construed liberally in favor of the insured and strictly against the insurer, where the meaning of the language used is doubtful, uncertain or ambiguous.").

While the definition of "insured" in the umbrella policy arguably might be viewed as contrary, at least in part, to the definition in the underlying policy, it is neither clearly nor manifestly so. Indeed, I am persuaded that the better reading, absent an exclusion, or some fair, if not clear indication of an intent to exclude, is that the umbrella provision is not contrary to the underlying policy's definition of insured.

---

[2] In that situation, in other words, a less foreseeable risk – that a spouse would use a vehicle without permission – would be covered, while a more foreseeable risk – that the spouse would use the vehicle – would not be covered.

To find that the umbrella definition stands alone, without carrying forward any aspect of the underlying policy's definition of insureds [employees, for example] leads to an untoward, unexpected, and inexplicable result. No basis or principle of construction exists [or, in any event, has been recited by Empire] for picking and choosing among the insureds covered in the underlying policy and finding some, but not all covered in the umbrella policy.

## Conclusion

For the foregoing reasons, I find that the umbrella policy provides coverage for the injuries sustained by Mr. Chehi.

It is, therefore,

ORDERED THAT the defendants' motion for summary judgment be, and the same hereby is granted, and that the plaintiff's motion for summary judgment be, and the same hereby is denied.

So ordered.

s/James G. Carr<br>
James G. Carr<br>
Chief Judge